UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRES E. CHAVEZ, JR.,<br><br>                              Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                              Defendant. | Case No.: 22-CV-1182 TWR (AHG)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>(ECF No. 5) |

Presently before the Court is Defendant the United States of America's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 5, "Mot."), along with Plaintiff Andres E. Chavez, Jr.'s Opposition to (ECF No. 6, "Opp'n") and Defendant's Reply in Support of (ECF No. 8, "Reply") the Motion. The Court took this matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (*See* ECF No. 9.) Having carefully considered Plaintiff's Complaint (ECF No. 1, "Compl."), the Parties' arguments, and the relevant law, the Court **GRANTS** Defendant's Motion to Dismiss **WITHOUT PREJUDICE**.

/ / /

/ / /

# BACKGROUND

Plaintiff is a service-disabled veteran of the United States Marine Corps who owned and operated a business called StandBuy Distributors, Inc. ("SDI"). (Compl. at 10[1]; Opp'n at 13.) SDI contracted with the Defense Logistics Agency ("DLA") to supply Bushnell tactical range finders to the United States military. (*See* Compl. at 10–11; Opp'n at 13.) Plaintiff's contracts with DLA were part of the Service-Disabled Veteran-Owned Small Business Program, which gives the United States Army the authority to give service-disabled veteran-owned small businesses preference for contracting opportunities. (Compl. at 6–10.)

Plaintiff had a good relationship with a former supervisor at DLA who mentored and assisted Plaintiff and SDI with the DLA contracts. (*Id*. at 11–12.) But once that supervisor retired in early 2020, Plaintiff ran into issues with DLA. (*Id*.) DLA revoked acceptance of the range finders supplied by SDI and a contracting officer eventually issued a decision explaining that SDI owed DLA over $40,000 based on the officer's determination that SDI supplied the wrong type of range finder to DLA. (Compl. at 11; ECF 1-6 at 2.) DLA demanded that Plaintiff pay the amount requested or risk being barred from federal contracting. (Compl. at 11.)

Plaintiff appealed the contracting officer's decision to the Armed Service Board of Contract Appeals ("ASBCA"). (*Id*. at 14.) In July 2021, the ASBCA determined that DLA's revocation of its acceptance of the range finders was untimely, thereby reversing the contracting officer's decision. (ECF 1-6 at 2–8.)

In August 2022, Plaintiff filed a Complaint in this Court under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794. (*See* Compl. at 2–3, 17–23.) In his Complaint, Plaintiff brings the following eight causes of action against the United States: (1) intentional infliction of emotional distress

---

[1] Throughout this Order, pin citations refer to the CM/ECF pagination stamped at the top of each page.

("IIED"); (2) breach of fiduciary duty; (3) negligence; (4) negligent supervision; (5) abuse of process; (6) loss of consortium; (7) violation of the Rehabilitation Act; and (8) violation of Defendant's "mandatory statutes, regulations, and policies." (*Id.* at 17–23.) The allegations in Plaintiff's Complaint are based on Plaintiff's claim that DLA employees

> falsely accused Plaintiff of fraud by supplying China[-]made tactical range finders made by Bushnell under several awarded contracts and issued a 'contracting officer's final decision' . . . to Plaintiff, which in short explained that Plaintiff and his company owed [DLA] tens of thousands of dollars (over $40k) and demanded Plaintiff pay the amount requested immediately or risk being barred from federal contracting and/or prosecution.

(*Id.* at 11.) Plaintiff claims DLA's employees negligently proceeded with an unjustified, unlawful, and frivolous contracting officer's decision that was based on false information and that Plaintiff was not "mentally prepared to receive." (*Id.* at 12–13.) This negligent decision-making, Plaintiff claims, caused him to have a "severe mental breakdown." (*Id.* at 13.) He thus seeks monetary damages from the United States for causing him to become increasingly disabled. (*Id.* at 13, 17, 24.)

**MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

**I.     Legal Standards**

   ***A.     Federal Rule of Civil Procedure 12(b)(1)***

A party may challenge the Court's subject-matter jurisdiction through a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(1). *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Because "[f]ederal courts are courts of limited jurisdiction," "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Consequently, "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

/ / /

1	"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White*, 227 F.2d at 1242. "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* (first citing *Safe Air for Everyone*, 373 F.3d at 1039; and then citing *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).

Here, Defendant facially attacks Plaintiff's Complaint—without disputing the facts in Plaintiff's Complaint, Defendant argues the Court lacks subject-matter jurisdiction over Plaintiff's claims. (*See* Mot. at 11–17.) "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121 (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

**B.	Sovereign Immunity**

"Where the United States is a defendant, a mere showing of federal jurisdiction does not suffice." *United Aeronautical Corp. v. U.S. Air Force*, No. 2:20-CV-1955-ODW (JDEx), 2021 WL 794500, at *3 (C.D. Cal. Mar. 2, 2021); *see N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1484 (9th Cir. 1985). That is because the United States generally enjoys sovereign immunity from civil suits. *See United States v. Sherwood*, 312 U.S. 584, 586–87 (1941). But Congress may explicitly waive the United States' sovereign immunity and consent to suit in federal court. *See United States v. King*, 395 U.S. 1, 4 (1969); *see also FAA v. Cooper*, 566 U.S. 284, 290 (2012) ("We have said on many occasions that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." (citation omitted)). "The United States' consent to suit is a prerequisite for jurisdiction. . . . Without a waiver of sovereign immunity, federal courts lack subject matter jurisdiction over cases against the government." *Allianz Glob. Risks US Ins. Co. v. United States*, No.

21-CV-1202-BAS-BGS, 2022 WL 1271140, at *5 (S.D. Cal. Apr. 28, 2022) (citation omitted). And courts "constru[e] waivers of sovereign immunity narrowly in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 195 (1996). Therefore, "[t]o sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Id*. at 192.

"The FTCA provides a limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment." *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000); *see Millbrook v. United States*, 569 U.S. 50, 52 (2013) ("The [FTCA] gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment.'" (quoting 28 U.S.C. § 1346(b)(1))). "Under the FTCA, the United States may be held civilly liable for the torts of its employees 'in the same manner and to the same extent as a private individual under like circumstances.'" *Nurse*, 226 F.3d at 1000 (quoting 28 U.S.C. § 2674). But the FTCA's waiver of immunity is limited by several statutory exceptions. *Id.*; *see* 28 U.S.C. § 2680. And if the plaintiff's causes of action "fall within one or more of these exceptions, then the federal courts lack subject matter jurisdiction to hear [his] claims." *Nurse*, 226 F.3d at 1000.

**II. Analysis**

Defendant moves to dismiss Plaintiff's Complaint arguing the Court lacks subject-matter jurisdiction over Plaintiff's claims, *see* Fed. R. Civ. P. 12(b)(1), and, even if the Court had jurisdiction, each of Plaintiff's causes of action fails to state a claim, *see* Fed. R. Civ. P. 12(b)(6). (*See* Mot. at 16–35.) Defendant contends (1) all of Plaintiff's claims are barred by the Contract Disputes Act ("CDA"); (2) Plaintiff's FTCA claims are barred by the intentional torts and the discretionary function exceptions to the FTCA's limited waiver of sovereign immunity; (3) Plaintiff's Rehabilitation Act claim is barred because the United States has not waived immunity against claims for monetary damages under that Act; and

(4) Plaintiff's Complaint fails to plausibly allege any claim. (*Id.*) Plaintiff contends that none of these jurisdictional bars apply to his claims and that each of his claims is sufficiently pled. (*See* Opp'n at 16–35.)

### A. The Contract Disputes Act

The Tucker Act carves "out a limited waiver of the United States' sovereign immunity over 'any claim against the United States . . . upon any express or implied contract with the United States.'" *Allianz Glob. Risks US Ins. Co.*, 2022 WL 1271140, at *6 (quoting *N. Side Lumber Co.*, 753 F.2d at 1484); *see also* 28 U.S.C. §1491(a)(1). And when a claim is for more than $10,000, the Tucker Act confers exclusive jurisdiction to the Court of Federal Claims. *See Allianz Glob. Risks US Ins. Co.*, 2022 WL 1271140, at *6. The Tucker Act also specifically provides the Court of Federal Claims "with jurisdiction over 'any claim by or against, or dispute with, a contractor arising under [the CDA].'" *Todd Const., L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011) (quoting 28 U.S.C. § 1491(a)(2)).

The CDA, in turn, waives sovereign "immunity for claims arising out of 'any express or implied contract . . . made by an executive agency for procurement of property or services, other than real property.'" *Allianz Glob. Risks US Ins. Co.*, 2022 WL 1271140, at *6 (quoting 41 U.S.C. § 7102(a)). "Under the CDA, 'procurement' means 'the acquisition by purchase, lease or barter, of property or services for the direct benefit or use of the Federal Government.'" *Sunbelt Rentals, Inc. v. United States*, No. 1:17-CV-00325-CWD, 2018 WL 5621859, at *3 (D. Idaho Oct. 30, 2018) (quoting *New Era Constr. v. United States*, 890 F.2d 1152, 1157 (Fed. Cir. 1989)). The CDA "grants exclusive jurisdiction to claims covered under its provisions to the Court of Federal Claims." *Allianz Glob. Risks US Ins. Co.*, 2022 WL 1271140, at *6; *see also United States v. Suntip Co.*, 82 F.3d 1468, 1471, 1474 (9th Cir. 1996). "Thus, federal district courts lack jurisdiction over a contractor's claim against the government which is subject to the CDA." *Sunbelt Rentals, Inc.*, 2018 WL 5621859, at *3.

/ / /

To determine whether the CDA applies to Plaintiff's claims, the Court must decide whether the claims "relate to" a government contract, meaning they "must have some relationship to the terms or performance of a government contract." *Todd Const., L.P.*, 656 F.3d at 1312–13. "A contractor's claim need not be based on the contract itself (or a regulation that can be read into the contract) as long as it relates to its performance under the contract." *Id.* at 1314. To determine whether a claim is "founded upon a contract for the purposes of the Tucker Act [, and by extension, the CDA]," courts consider "the source of the rights upon which the plaintiff bases its claims, and . . . the type of relief sought (or appropriate)." *United Aeronautical Corp.*, 2021 WL 794500, at *5 (citation omitted); *see also Megapulse. Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). "Thus, where a plaintiff's claim is 'concerned solely with rights created within the contractual relationship and has nothing to do with duties arising independently of the contract[,] the claim is founded upon a contract with the United States and is therefore within the Tucker Act and subject to its restrictions on relief.'" *United Aeronautical Corp.*, 2021 WL 794500, at *5 (quoting *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994)); *cf. id.* at *7 (where source of rights underlying the claim arises independently from any contract, a claim is not contractually-based under the Tucker Act).

Furthermore, "[i]t is well-established that disguised contract actions may not escape the CDA." *Am. Ground Transp., Inc. v. U.S. Marine Corps. Cmty. Servs.*, No. 19-CV-539-CAB-AHG, 2019 WL 5191678, at *2 (S.D. Cal. Oct. 15, 2019). "Neither contractors nor the government may bring a contract action in federal district court simply by recasting claims in tort language or as some statutory or regulatory violation." *Id.* And courts "do not allow a plaintiff's artful pleading to dictate whether a claim is tortious or contractual in nature for the purpose of determining if the FTCA or the Tucker Act and CDA apply." *Allianz Glob. Risks US Ins. Co.*, 2022 WL 1271140, at *9; *see Am. Ground Transp., Inc.*, 2019 WL 5191678, at *2 ("Effective enforcement of the jurisdictional limits of the CDA mandates that courts recognize contract actions that are dressed in tort clothing."). For example, "[i]f an action arises 'primarily from a contractual undertaking,' jurisdiction lies

in the Claims Court 'regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract.'" *Wood v. United States*, 961 F.2d 195, 198 (Fed. Cir. 1992) (citation omitted); *Blanchard v. St. Paul Fire & Marine Ins. Co.*, 341 F.2d 351, 358 (5th Cir. 1965) ("It is settled that claims . . . [that] are founded upon an alleged failure to perform explicit or implicit contractual obligations[ ] are not deemed 'tort' claims for the purposes of the division between Tort Claims Act and Tucker Act jurisdiction. This is so irrespective of whether the plaintiff chooses to characterize the failure in terms of 'negligence' upon the part of the contracting officer or other government officials.").

Here, Defendant is correct that all of Plaintiff's claims relate to the procurement contract between DLA and SDI. (*See* Mot. at 16.) Each of Plaintiff's claims is based on Plaintiff's allegation that DLA employees "falsely accused Plaintiff of fraud by supplying China[-]made tactical range finders made by Bushnell under several awarded contracts and issued a 'contracting officer's final decision' . . . to Plaintiff, which in short explained that Plaintiff and his company owed [DLA] tens of thousands of dollars (over $40k)." (Compl. at 11.) Throughout Plaintiff's Complaint and his Opposition to Defendant's Motion, Plaintiff summarizes his claims as stemming from an "unlawful," "unjustified," and "frivolous" contracting officer's final decision relating to SDI's supply of particular range finders. (Compl. at 12–14, 17; Opp'n at 14, 20.) He alleges this decision, and DLA's attempt to enforce this decision, caused him severe emotional distress and further disabled him.[2] (Compl. at 13, 17, 24.) At their core, each of Plaintiff's claims is founded upon

///

---

[2] To be sure,

> [u]nder the CDA, claims by a government contractor against the United States [and vice versa] must first be the subject of a decision by the contracting officer, defined as 'any person who . . . has the authority to enter into and administer contracts and make determinations and findings with respect thereto.' The decision by the contracting officer may be appealed to an agency board of contract appeals or to the United States Court of Federal Claims. Further appeals from these bodies must be filed with the United States Court of Appeals for the Federal Circuit.

SDI's contract with DLA and would require the Court to make a determination about SDI's and DLA's performance obligations under the contract and whether either party breached the contract. *See Allianz Glob. Risks US Ins. Co.*, 2022 WL 1271140, at *11 (finding plaintiffs' negligence claim "contractually based because it require[d] the [c]ourt to decide what [the plaintiffs'] rights were pursuant to the Contract . . . in order to determine whether [the p]laintiffs establish[ed] duty, breach, and even damages"); *Performance Contracting, Inc. v. United States,* No. 2:11-CV-02920-MCE, 2012 WL 3234210, at *3 (E.D. Cal. Aug. 6, 2012) ("Each of [the p]laintiff's causes of action is essentially one for breach of contract because each claim depends on the interpretation of the Government's contractual obligations under the . . . Contract.").

While Plaintiff argues his claims are classic tort claims, nothing in his pleading or motion papers shows that his claims have anything "to do with duties arising independently of the contract." *United Aeronautical Corp.*, 2021 WL 794500, at *5; *see Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002) ("It is well established that where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal Claims."); *Allianz Glob. Risks US Ins. Co.*, 2022 WL 1271140, at *11 (finding plaintiffs' negligence theory did nothing to render defendant liable for any independent state tort that did not depend on defendant's purported breach of contract); *Dourandish v. Fitzgerald*, No. 13-CV-05984-VC, 2014 WL 12605471, at *1 (N.D. Cal. June 20, 2014) ("Because [the plaintiff's] allegations do not exist independently of [the] contract dispute, and because they arise directly from the contract, the allegations are appropriately classified as contract, not tort, claims."). The Court finds that Plaintiff's action arises primarily from a

---

*Sunbelt Rentals, Inc.*, 2018 WL 5621859, at *3 (citations omitted); *see* 41 U.S.C. §§ 7101(6), 7103(a), 7104, 7107(a). Here, Plaintiff already appealed the contracting officer's decision to the ASBCA, which determined that DLA's revocation of its acceptance of the range finders was untimely, thereby reversing the contracting officer's decision. (Compl. at 14; ECF 1-6 at 2–8.) Plaintiff now seeks to bring claims in this Court based on the same contracting officer's decision.

contractual undertaking such that jurisdiction lies in the Court of Federal Claims, even assuming Plaintiff's alleged loss resulted from DLA negligently performing under the contract. *See Wood*, 961 F.2d at 198. Accordingly, the Court lacks jurisdiction over Plaintiff's claims.

### B.   Exceptions to the Federal Tort Claims Act's Limited Waiver of Sovereign Immunity

In addition to Plaintiff's claims being generally barred by the CDA, some of Plaintiff's claims are also barred by exceptions to the FTCA's waiver of sovereign immunity.

#### 1.   Intentional Torts Exception

The intentional torts exception specifically preserves sovereign immunity from suit for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," unless committed by a law enforcement officer. 28 U.S.C. § 2680(h); *see Millbrook*, 569 U.S. at 52. "The phrase 'arising out of' is interpreted broadly to include all injuries that are dependent upon one of the enumerated torts having been committed." *Lyndon v. United States*, No. CV 20-00034 JMS-RT, 2020 WL 3405530, at *4 (D. Haw. June 19, 2020).

Here, Plaintiff's fifth cause of action for abuse of process is explicitly barred by the intentional torts exception, which expressly exempts any claim for abuse of process from the FTCA's waiver of sovereign immunity. *See* 28 U.S.C. § 2680(h); *see also Stanford v. Clayton*, No. 1:17-CV-02335 (APM), 2018 WL 8963448, at *2 (D.D.C. July 5, 2018), *aff'd,* 771 F. App'x 2 (D.C. Cir. 2019).

Further, although Plaintiff's second cause of action is titled "breach of fiduciary duty" and his third cause of action is titled "negligence," courts "looks beyond the labels used to determine whether a proposed claim is barred [under § 2680(h)]." *Snow-Erlin v. United States*, 470 F.3d 804, 808 (9th Cir. 2006) (citation omitted). "If the gravamen of Plaintiff's complaint is a claim for an excluded tort under § 2680(h), then the claim is

barred." *Id.*; *see DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1123 (9th Cir. 2019) ("[I]f the governmental conduct underlying a claim falls within an exception outlined in section 2680, the claim is barred, no matter how the tort is characterized."). Plaintiff's breach of fiduciary duty and negligence claims are based on Plaintiff's allegation that DLA employees negligently, unjustifiably, and frivolously issued a contracting officer's decision finding Plaintiff and his company owed DLA thousands of dollars, which resulted in Plaintiff's inability to continue as part of the Service-Disabled Veteran-Owned Small Business Program.  (Compl. at 11–13; Opp'n at 14, 20, 35–37.)  While labeled as other torts, these claims are best described as arising out of a claim for malicious prosecution and are therefore barred by § 2680(h). *See Lyndon*, 2020 WL 3405530, at *4 (claims arising from one of the enumerated torts, like malicious prosecution, are barred by §2860(h)); *Stanford*, 2018 WL 8963448, at *2.

The same is also true for Plaintiff's IIED claim.  If the conduct upon which Plaintiff rests his claim for IIED constitutes one of the enumerated torts barred by § 2680(h), his IIED claim is barred even though the conduct may also constitute a tort other than the ones enumerated in § 2680(h). *See Sheehan v. United States*, 896 F.2d 1168, 1171 (9th Cir.), *amended by* 917 F.2d 424 (9th Cir. 1990); *see Michel v. United States*, No. 16-CV-277-GPC (AGS), 2017 WL 5067608, at *17 (S.D. Cal. Oct. 31, 2017).  Like his negligence claims, Plaintiff's IIED claim is based on conduct best described as constituting a claim for malicious prosecution and is therefore barred by § 2680(h).

The Court therefore lacks jurisdiction over Plaintiff's first, second, third, and fifth causes of action under the intentional torts exception to the FTCA.[3]

---

[3]   As for Plaintiff's eighth cause of action alleging the United States violated its "mandatory statutes, regulations, and policies," (Compl. at 23), Plaintiff seems to suggest this alleged violation falls under the United States' waiver of sovereign immunity under the FTCA.  (Opp'n at 33–37.)  Plaintiff, however, does not explain how this alleged violation is a tort for which the United States has waived its sovereign immunity.  (*See id.*); *see also Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983) ("The party who sues the United States bears the burden of pointing to such an unequivocal waiver of immunity.").  The

### *2. Discretionary Function Exception*

The discretionary function exception precludes claims against the United States that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion was abused." 28 U.S.C. § 2680(a). To determine whether the discretionary function exception applies, courts engage in a two-step inquiry: (1) "the court must determine whether the challenged conduct involves an element of judgment or choice" and (2) "if the conduct involves some element of choice, the court must determine whether the conduct implements social, economic or political policy considerations." *Nurse*, 226 F.3d at 1001. "[D]ecisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000); *see also Dovenberg v. U.S. ex rel. U.S. Forest Serv.*, 407 F. App'x 149, 149 (9th Cir. 2010) ("Decisions regarding the training and supervision of government employees 'fall squarely within the discretionary function exception' to the Federal Tort Claims Act." (citation omitted)); *Nurse*, 226 F.3d at 1001.

Plaintiff's fourth cause of action for negligent supervision is barred by the discretionary function exception to the FTCA. Plaintiff's claim for negligent supervision is essentially a claim that the United States failed to properly supervise and prevent its employees from negligently and unjustifiably issuing a contracting officer's decision that demanded Plaintiff pay DLA thousands of dollars for an alleged breach of contract. (Compl. at 11–12.) Plaintiff also claims that through its alleged negligent supervision, the United States failed to abide by the DLA's policies and regulations related to working in collaboration with service-disabled veteran-owned small businesses. (*Id.* at 12; Opp'n at 14–15.) But as noted above, "[d]ecisions regarding the training and supervision of

---

Court also notes that because a regulation is not an act of Congress, it cannot waive the Federal Government's sovereign immunity. *See Plaskett v. Wormuth*, 18 F.4th 1072, 1086 (9th Cir. 2021).

government employees 'fall squarely within the discretionary function exception' to the Federal Tort Claims Act." *Dovenberg*, 407 F. App'x at 149 (citation omitted); *see Nurse*, 226 F.3d at 1001. More specifically, under the discretionary function exception's two-part framework, (1) this challenged conduct involves elements of judgment or choice—DLA supervisors' chosen methods of overseeing a contracting officer's decision resolving a contract dispute and of overseeing other DLA employees' enforcement of that decision—and (2) implements social and economic considerations—it involves oversight of the interpretation and enforcement of the terms of a contract between the Federal Government and a service-disabled veteran-owned small business. *See Nurse*, 226 F.3d at 1001.

Plaintiff's argument that this cause of action falls outside the discretionary function exception is unavailing. He cites to cases, (*see* Opp'n at 30), that found negligent supervision claims fell outside the exception because in those cases the plaintiffs were able to show the federal employee's discretion was limited by a specific federal statute, regulation, or policy. *See, e.g.*, *Doe v. United States*, No. 16-2162, 2017 WL 1908591, at * 6 (D. Kan. May 10, 2017). Unlike those cases where the supervisors had to follow a mandatory federal directive regarding regular reviews of their employees, here, Plaintiff has pointed to no specific mandatory directive that DLA supervisors failed to follow. (*See* Compl. at 4–8.) Instead, Plaintiff's discussion of the Veterans Benefits Act of 2003 and the general policy goals of the United States Army and DLA only highlight the government's goal to support service-disabled veteran-owned small businesses. *See, e.g.*, 15 U.S.C. § 657f(c)("[A] contracting officer *may* award a sole source contract to any small business concern owned and controlled by service-disabled veterans if . . . ." (emphasis added)); 15 U.S.C. § 644(g)(1)(A)(ii) ("The Governmentwide *goal* for participation by small business concerns owned and controlled by service-disabled veterans shall be established at not less than 3 percent of the total value of all prime contract and subcontract awards for each fiscal year." (emphasis added)). Nothing in Plaintiff's discussion points to any specific mandatory directive that DLA supervisors must follow without discretion. / / /

(*See* Compl. at 4–8.)  Plaintiff's negligent supervision claim is therefore barred under § 2680(a).

### C.      Rehabilitation Act

Section 504(a) of the Rehabilitation Act "prohibits, among other things, discrimination on the basis of disability 'under any program or activity conducted by an Executive Agency.'" *Lane*, 518 U.S. at 189 (quoting 29 U.S.C. § 794(a)).  Congress, however, has not "waived the Federal Government's immunity against monetary damages awards beyond the narrow category of § 504(a) violations committed by federal funding agencies acting as such—that is, by 'Federal provider[s].'" *Id*. at 193.  In other words, "the United States has not waived immunity for monetary damages for alleged violations of Section 504(a) of the Rehabilitation Act committed by programs or activities conducted by a federal Executive agency." *G.B. v. United States*, No. CV 21-8071-GW-ASX, 2022 WL 2903135, at *1 (C.D. Cal. Mar. 29, 2022).

Plaintiff's seventh cause of action against the United States for an alleged violation of the Rehabilitation Act seeks only monetary damages.  (Compl. at 24.)  The Court thus lacks subject-matter jurisdiction to adjudicate Plaintiff's seventh cause of action.

## MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Because the Court lacks subject-matter jurisdiction over all the claims in Plaintiff's Complaint as discussed above, the Court need not address Defendant's argument that Plaintiff fails to plausibly state any claim against it under Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Court lacks subject-matter jurisdiction over Plaintiff's claims.  The Court thus **GRANTS** Defendant's Motion to Dismiss Plaintiff's Complaint and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint. *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("In general, dismissal for lack of subject matter jurisdiction is without prejudice."); *see also Hernandez v. Conriv Realty*

*Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist."). Plaintiff's claims relating to the contracting officer's decision and its impact on Plaintiff must be brought, if anywhere, in the Court of Federal Claims.[4]  But Plaintiff may file an amended complaint <u>within sixty (60) days of the date of this Order</u> alleging relevant claims that are completely independent of the contracting officer's decision and include facts to that effect.  In any amended complaint, Plaintiff must also address whether he filed an administrative claim with the appropriate federal agency prior to bringing an FTCA claim. *See* 28 U.S.C. § 2675; *Holloman*, 708 F.2d at 1402 ("As a prerequisite to suit under the [FTCA], the claimant must file an administrative claim with the appropriate federal agency."); *Jerves v. United States*, 966 F.2d 517, 518 (9th Cir. 1992) ("[C]laim requirement of section 2675 is jurisdictional in nature and may not be waived." (citation omitted)).

*Should Plaintiff elect not to file a timely amended complaint, this action will remain dismissed without prejudice.*

**IT IS SO ORDERED.**

Dated:  March 9, 2023

_____
Honorable Todd W. Robinson
United States District Judge

---

[4]     This Order has no bearing on whether Plaintiff would be permitted to file his claims with the Court of Federal Claims given his previous appeal to the ASBCA.  (*See* Compl. at 14; ECF 1-6 at 2–8.)